## YOUNGSTOWN MUNICIPAL RY CO v CHISMAR et

Ohio Appeals, 7th Dist, Mahoning Co

Decided May 24, 1935

Harrington, Huxley & Smith, Youngstown, for plaintiff in error.

John Willo, Youngstown, for defendant in error, Michael Chismar.

C. F. Scanlon, for defendant in error, Rosalie Haisman.

## OPINION

By ·NICHOLS, J.

We have thoroughly examined the testimony contained in the record as to the facts and circumstances surrounding the collision between this automobile and street car. It appears from the evidence that Glenwood Avenue runs in approximately a north and south direction. It is 38 to 40 feet wide, is paved with brick and has two street car tracks, one for the north bound cars and the other for the south bound cars; that at the time of the collision the street was clear of traffic, except for the street car, the automobile of Miss Haisman and an automobile driven by one of plaintiff's witnesses, Carl Lund.

Carl Lund testified that he was driving north on Glenwood Avenue about two hundred feet behind the Haisman auto; that the Haisman auto was also traveling north on

Glenwood Avenue at a speed of about 20 to 30 miles per hour (Miss Haisman testified that she was traveling 25 to 30 miles per hour); that the Haisman automobile was traveling in the space between the east curb of Glenwood Avenue and the easterly rail of the north bound car track; that the Haisman auto continued along in the space between the east curb of Glenwood Avenue and the first rail of the north bound tracks until it got up to Willis Avenue, and that it made part of the bend at Willis Avenue and then swerved over to the south bound tracks and collided with the street car at a point about 50 feet north of Willis Avenue; that the street car, when Mr. Lund noticed it first was traveling about 18 to 20 miles per hour and was then about 75 feet north of Willis Avenue and the Haisman auto was yet south of Willis Avenue; therefore, taking plaintiff's own witness to be correct, the street car traveled only 25 feet to the point of the accident, while the Haisman auto traveled 50 feet, plus the width of Willis Avenue, to the point of the accident. No witness testifies positively that the bell or gong on the street car was not being sounded previous to the collision, each of the witnesses testifying that he did not know, or that he did not hear. So far as we can observe from the testimony, no witness was asked whether the bell or gong on the street car was sounded at least 100 feet distant from the intersection of Glenwood Avenue and Willis Avenue. The street car did not come to the intersection of these streets before the collision and therefore that part of §587 of the Ordinance of the City of Youngstown, which requires the bell or gong to be sounded continuously while passing street intersections could not possibly apply to the situation here presented.

Section 588 of the Municipal Ordinance, providing that any car approaching any curve shall do so with the greatest care and shall be under the complete control of the person running the same, can not be reasonably construed so as to require the operator of the street car to have the same in such control that the car can be stopped instantly, as such stopping would not comport with the high degree of care required of the street car company in the transportation of its passengers as such instant stopping would tend toward, rather than prevent, injuries to such passengers by throwing them from their seats. The first duty of the motorman is for the safety of his passengers.

The witness, Lund, testified that the street car was "travelling at the regular rate"; that "the course of the Haisman automobile was a straight course where the curve is, right straight across the street, headed in towards the street car"; that the auto first went over the north bound track, on over the "devil strip", so-called, a strip of paving between the two tracks, and over the south bound car track before the collision; that the right front part of the automobile struck the right front part of the street car, meaning "the right side, the way she traveled, and the right side of the street car, the way it traveled." The witness, Lund, was indefinite as to whether the street car had stopped before the impact, but said that "the street car stopped very quickly." Photographs of the scene of the collision are in evidence and we gather from the evidence and these photographs that the collision occurred at a point approximately where the north end of the curve in the street begins, being 50 feet north of the intersection of the two streets. From the evidence and the exhibits in this case, we can see no application of the Ordinance of the City of Youngstown, as plead in the petition of plaintiff, to the collision in question, nor can we find any evidence in the record from which the jury would be warranted in finding any negligence upon the part of the street railway company which was a proximate cause of plaintiff's injuries. The defendant, The Youngstown Municipal Railway Company, moved the court, at the close of plaintiff's testimony and at the close of all the evidence, for a directed verdict in its favor. We think these motions should have been granted. There is no law or ordinance of the City of Youngstown which prescribes the speed of street cars and we find that the provisions of §588 of the Ordinance of the City of Youngstown, set forth in plaintiff's petition, wherein it is provided that on the first appearance of danger to vehicles moving toward the same on the street or tracks, said street cars shall be stopped within the shortest time and within the shortest distance possible, is too vague and indefinite to constitute a rule of conduct in the operation of street cars in said city, and that said section has not been violated in this particular case, as it is clearly shown by the evidence that the street car traveled but 25 feet, while the automobile of Miss Haisman was traveling approximately 100 feet.

The ordinance of the City of Youngstown does not require the gong or bell of a street car to be sounded continuously from a point 100 feet distant from a street intersection until the street car passes the intersection.

It only requires that the bell or gong shall be sounded at least 100 feet distant from all street intersections, and continuously while passing such street intersections. If the bell or gong was sounded 1000 feet distant from street intersections this would comply with the first portion of this section, since 1000 feet insets the requirement of "at least 100 feet." Since the street car was stopped within 25 feet after the Haisman's automobile reached Willis Avenue, it is apparent that the street car was being operated at the time with the greatest care and under such complete control of the person operating the same as is consistent with the operation of street cars.

It can not be said that the operator of the street car was required to anticipate that the driver of an automobile upon this public street would stoop to pick her pocketbook from the floor of her automobile and permit the automobile to suddenly cross both street car tracks and collide with the street car.

Miss Haisman's testimony was very frank wherein she states that she struck the street car with the right part of her automobile striking the right front of the street car. She testified that just before the collision she "reached for my purse that had fallen to the floor" of her car; that she did not definitely know where she was with reference to Willis Avenue when she stooped over to pick up this purse, but when she looked up again and looked out ahead of her "she was already going across the street car tracks diagonally and was facing the oncoming street car"; that she "was pretty near the street car and I thought whatever I did I would hit it and so to save myself I turned the car to the left so it presented the right side away from me." It is quite apparent that she was not giving any attention to the operation of her car at the time, and that her own negligence was the sole proximate cause of the collision and consequent injuries to plaintiff.

We hold that the record discloses no negligence upon the part of The Youngstown Municipal Railway Company which was a proximate cause of the injuries to plaintiff and that the trial court committed prejudicial error in overruling the motions of said The Youngstown Municipal Railway Company for a directed verdict at the close of plaintiff's case and at the close of all the evidence.

This court coming now to enter the judgment which the trial court should have entered at the close of all the evidence, renders final judgment in favor of said The Youngstown Municipal Railway Company.

Judgment reversed and final judgment rendered in favor of The Youngstown Municipal Railway Company.

CARTER and ROBERTS, JJ, concur.